**TRIPLE A MACHINE SHOP, Inc., a corporation, Appellant,**

v.

**WATERMAN STEAMSHIP CORPORATION, a corporation, Appellee.**

No. 14268.

United States Court of Appeals
Ninth Circuit.
April 25, 1955.

Derby, Cook, Quinby & Tweedt, Stanley J. Cook, San Francisco, Cal., for appellant.

Graham & Morse, Francis L. Tetreault, San Francisco, Cal., Clarence G. Morse, Washington, D. C., for appellee.

Before DENMAN, Chief Judge, and ORR and CHAMBERS, Circuit Judges.

DENMAN, Chief Judge.

Appellant, hereafter the repairer, appeals from a decree in admiralty holding it liable to appellee, hereafter the shipowner, for negligently causing a fire in the Number 1 hold of its steamship, Jean Lafitte, while it was at Pier 15 in the harbor of San Francisco. The vessel had been loaded in the Number 1 hold on the day before with Army clothing and supplies at an Army dock in the harbor of Oakland, Alameda, California. The negligence found is that the repairer's two employees, in using an acetylene torch to burn off and remove an iron upright welded to the deck just aft of the Number 1 hatch handled it in such a manner that its sparks entered through the hatch, into Number 1 hold and started a fire in bales of the military clothing wrapped in gunny sacks and thereby damaged the structure of the vessel.

The repairer contends that the shipowner has not produced evidence to sustain its burden of proof that the proximate cause of the injury to the ship was by the torch's sparks entering the hold through an aperture, admittedly the only method by which the torch could have caused the fire in the gunny-wrapped clothing.

It is not questioned that under and a few feet from where the torch was used there was an aperture between the steel hatch coamings and the hatch edge. If not otherwise covered, sparks could have reached the gunny wrapping of the bales of clothing, that is, assuming the torch were used so that its sparks were forced towards the aperture. There is testimony, heard by the court, that there was an overall covering of the hatch consisting of three layers of tarpaulin (tarred canvas), the flaps of which hung down the side of the walls of the hatch to the deck. It is not questioned that if these were not raised or the sparks had not burned holes through them, they could not have entered the hold.

There was testimony also that the hold of this privately owned vessel had been open late in the previous afternoon when its loading by some fourteen stevedores was completed and that the fire could be started by a burning cigarette butt

dropped by one of them. Such smoking was forbidden by the Army on all cargo vessels in the Army dock. The stevedore foreman saw no stevedore smoke while he was there during the previous day but stated that he was absent a part of that time on shore, when a fire well could have been started by such a dropping of a burning cigarette butt on the gunny cloth. The testimony is that a fire so started in the gunny would smoulder many hours before it burst into flame.

The record is barren of testimony that the tarpaulin cover of the hatch was raised during the time the torch was used in its vicinity. Highly significant is the failure of the shipowner to offer evidence of the condition of the *inside* face of the hanging flap of the tarpaulin next to the repairmen which must have been turned over on top of the hatch to uncover the aperture through which the torch's sparks would have to pass to reach the inflammable gunny sacking beneath. Had the repairmen pointed the torch in such a way as to enter the hold its sparks most likely would have shown burning marks on the tarred inner surface of the flap.

In depositions of the repairer's two employees who used the torch, they testified that they used it while on the hatch side of the steel upright they were cutting, pointing the torch away from the hatch and that the triple tarpaulin was at no time raised while they were there. Their testimony that they used the torch pointing it away from the hatch is corroborated by undisputed evidence that there was a careful examination of the *outside* of the tarpaulin by another witness and that no burned hole appeared on its tarred surface.

The shipowner contends that the court must have rejected *all* this deposition testimony because the two repair men testified that the burned clothing was not under where they were working, while photographs showed it was under them. However, assuming that this testimony is rejected, there still is no evidence that the tarpaulin was raised, and the testimony of another witness that he and other persons examined the tarred canvas surface and found no spark holes in it requires the inference that the torch was pointed away from and not over the hatch and that no sparks entered the hold.

With the not remote possibility that a long smouldering fire was started by a burning cigarette butt dropped by one of the fourteen stevedores and the absence of any testimony that the tarpaulin was raised we think that the shipowner did not sustain its burden of proof that the fire injuring the ship's structure was started by the use of the acetylene torch.

The judgment is reversed.